This next case is Case Number 4-17-0294. Carolyn Webb, Petitioner. Richard Lightsey, Respondent. Preparing for the Appellant as Attorney Lawless and for the Appellee as Attorney Passwater. Good afternoon. Good afternoon. Counsel, are you ready to proceed? I am ready. All right, you may. Thank you. May it please the Court. Good afternoon, Your Honors. Good afternoon, Counsel. My name is Colleen Lawless and I represent the Appellant, Carolyn Webb. This appeal derives from the trial court's entry of an order on Ms. Webb's petition for modification of child support, the petition for rule to show cause, and the denial of the request for attorney's fees. The issues raised can be summarized into four categories, the first being the award of a downward deviation from the statutory child support guidelines at that time. Second, the trial court erred in denying retroactive child support to the date of the petition for modification was filed, which was September of 2014. The lack of contribution to child care expenses, the Court's finding, as well as payment, any findings as relates to payment of 20% of Mr. Lightsey's annual bonus. The third issue is that the trial court erred in finding Mr. Lightsey was in contempt for his willful failure to pay 35% of Kendall, the minor child's, uncovered medical expenses pursuant to the original order that was entered in 2013. So you're saying the trial court erred in finding that he was not in contempt? Yes. Thank you, and I apologize if I misspoke. The fourth issue would be that the trial court erred in not awarding attorney's fees due to Mr. Lightsey's willful disregard of the rules of discovery, as well as the failure to abide by the 2013 order as relates to the 35% of uncovered medical expenses. As to the first issue, Mr. Lightsey failed to provide compelling evidence to justify the downward deviation. As this Court is aware, the Parentage Act requires child support to be calculated in the same manner as under the Illinois Marriage and Dissolution of Marriage Act. And at the time of the trial, there was a presumptive level of 20% of the payor's net income. And the purpose behind the child support is to provide reasonable and necessary educational, physical, mental, and emotional health needs of the child. The Supreme Court in Bussey in 1985 held that the child is not expected to live at a minimal level of comfort while the non-custodial parent is living in a life of luxury. And in cases where the court is looking at the 20% guideline in a higher income scenario, they must balance two concerns when dealing with that. And the first one would be that the child support would not result in a windfall, and that the second is the standard of living the child would have enjoyed absent the parties either divorcing or that the parties not staying together for the child. And the prior order in 2013 ordered that Mr. Lightsey pay $1,000 per month in child support plus 35% of the minor child's uncovered medical expenses. That $1,000 figure was based on Mr. Lightsey's 2013 affidavit stating that he was only earning $79,000 from a pension. It's undisputed that Mr. Lightsey was in fact receiving additional income at that time, and that income was in the form of stock options, the exercise of stock options. So throughout the course of a very lengthy and contested discovery, I was able to determine based on receipts of actual fidelity statements, the bank account statements, as well as tax returns, which took over two years to even receive. I was able to determine based on that, and the court found that Mr. Lightsey did in fact receive income in addition to the $79,000 in the pension. And so the trial court found that the vested stock options and the exercise of those was in fact income for child support purposes. However, the court only modified the child support order to $3,000 per month, which is a modification of, it ends up being 15% of Mr. Lightsey's net income. The court downward deviated and only found it was retroactive to April of 2016. And once again, and I understand the court would be aware of this, but the initial petition for modification for child support was filed September 8th of 2014. And that was after Mr. Lightsey had refused to provide income statements, which was ordered in the previous 2013 order, as well as filing a motion to clarify, saying he was actually operating businesses with four other partners. Ms. Lightsey also determined through a course of a Google search that Mr. Lightsey was also the vice president of sales and marketing for Catalyst Card Company. So in finding that out, we filed a petition to modify. And as I've outlined in pretty good detail in the statement of facts, at least I believe it was good detail, there was a lengthy discovery process where the court, and I was required to file motions to compel. There was a long delay as it relates to receipt of the actual documents. The initial request to produce provided screenshots of his Fidelity account. So it would tell me, Mr. Lightsey would tell me that he had $500,000 in his Fidelity account, but refused to provide his actual account statements, which would have shown me that he was receiving monthly stock distributions. This is the exact same thing that happened in the 2013 affidavit, Mr. Lightsey's 2014 affidavit, as well as his 2016 affidavit that was filed at the time of the third day of the evidentiary, the final evidentiary hearing. This was a continual problem throughout this case, which was he was hiding from me and from Ms. Webb his monthly bank account statements, his actual tax returns. I would receive the first two pages and not receive any of the additional supporting documents, as well as the bank account statements. Despite having online access to all of this, the American Express, his Fidelity account, as well as his, I think it was a Wells Fargo account, he would provide me the most limited detail, and it would just be over a span of 180 days or 18 months, instead of actually providing me the checks and providing me the necessary documents that would show what your income actually was at that time. The trial court didn't order the Child Support Retroactive to September 2014, the filing date, right? Correct. And what was the rationale given by the trial court for deciding only to take it back to April of 2016? The court's rationale at that time was that he did not find, the court did not find that Mr. Lightsey had done it purposely, that it was willfully done, and that he actually had only just began employment with Catalyst Card Company as of April of 2016. So he used that date, basically. Yes, he used the April of 2016 date as the date in which the child support should start. And it's important to note that the Catalyst Card Company employment was once again another hotly contested issue for me to even determine where he worked, what his employment situation was. The abuse of discretion standard would apply to that determination, is that right? Yes, it would, Your Honor. How would that be an abuse of discretion for the court to have reasoned that it should only make it retroactive to April 1, 2016 and not September 2014? As outlined in the Carnes v. Dressen case, which is a Fourth District case in 1991, which dealt specifically with the retroactive, the court's determination of retroactive child support. And in that case, the appellate court reversed the trial court's denial of retroactive child support because any other decision would encourage delay tactics in litigation and defeat the obvious intent of the legislature. It also, in advance of that statement, stated, quote, in the present case the trial court was evidently mistaken as to when defendant received notice of the action and then went into its determination that it should have been retroactive. So in that particular case, the appellate court found that the trial court had actually committed, had actually been mistaken in its decision. Are we dealing with a mistake here by the trial court? No, I don't. I believe it is different in that specific fact that you're referring to. I don't believe it was a mistake from the court because I believe the court actually, in its order, identified that it was aware of when the petition was filed. And that Mr. Leitze, there's no mistake, Mr. Leitze received notification as of September of 2014. I believe the direction of the Carnes case is important because it does outline the need and the purpose behind making child support retroactive to the date that the person actually files the petition. Because if not, what happens is exactly what happened in this case. And it's not only detrimental to my clients but also other petitioners in the future because Mr. Leitze was able to pay child support at a level of somebody making $79,000. However, he was making over $350,000 to $400,000. And so the retroactivity, it's not as if the court was saying Mr. Leitze just shouldn't have to pay that. He found that that was income. And under the Marriage of Rogers, Illinois Supreme Court case, it says the trial court actually does not have discretion to deduct income that would ultimately be used for child support purposes. And I think this case is important because there's no dispute that he was receiving that income not only in 2013 at the final hearing that ultimately became the order in 2013, but every month after. I provided to the court as evidence monthly itemizations from his Wells Fargo account as well as his Fidelity account to show that these were not every once in a while. It was reoccurring income. In the levels of upwards to $30,000 a month, he was receiving income. And so I believe that the Dressen case would show and speak directly to a denial of retroactive in this case would not only prejudice the minor child under the child support and I think make the purpose of child support essentially worthless in this case because she was providing support and being provided support at a level of someone that was $79,000 while making over $350,000. But more importantly, it would encourage delay tactics, which is already a difficult process in divorce situations. We as attorneys as well as the courts have a lot of the dockets. There's a lot going on in the dockets. There are a lot of requests and reasonable reasons to file a motion to compel and reasonable objections. However, that wasn't this case. This was a case where I simply asked, and you can look at my initial... But as you've indicated, the trial court was aware of all of this. Yes. So what exactly was it then that was the abuse of discretion that the court exercised when it chose not to make it retroactive to the date of filing? What was its rationale? Well, the court's rationale, if I can look directly at the order, which I will, the court's rationale was if you could... Hold on a moment. I don't want to say something that's not true within the order. The court specifically said, in denying the retroactive child support, this court has reviewed the docket and history in this case concerning the September 2014 petition. That review shows that the matter being continued by agreement on several occasions, as well as hearings being rescheduled at the request of counsel. That does not obviate the very clear attempts by Ms. Webb and myself to receive the documents that were being requested. Is that a basis? A basis to deny retroactive support when you found that it is income? So the denial is based on you agree to the delay? I mean, does that summarize it? Yeah, that's the first part of the reasoning, was that because we continued by agreement some status hearings throughout the process, that that then means Mr. Lagsy doesn't have to pay child support at the same level as every other person that's paying every payor of child support under the guidelines. And then also, to further answer your question, the court also said the record reveals that the parties engaged in a lengthy discovery dispute wherein Lagsy was objecting to much of Carolyn's discovery. Lagsy cannot be faulted for this, as it is the litigant's right to make a good faith challenge to the breadth or scope of discovery. Well, I will say that Judge Davis was correct in saying that a litigant has the ability to make a good faith. I don't believe in this situation the facts warrant a good faith finding. And I believe that's specifically where the abuse of discretion comes into play. Because I asked for very common requests, just income, documents to show income, to show his assets and his financial status from the date of June of 2013 to when I first propounded them in September of 2014. I'm having difficulty understanding the relevance of discovery and cooperation or lack of cooperation once you find monies from certain sources constitute income. And you have the date when that income started coming in, and you have the date when the petition was filed. I don't see the relevance of those issues as to retroactivity. And I agree with you, Justice. And I agree that I don't believe as it relates to the retroactivity, I believe based on the marriage of Rogers precedent, when there's income, it counts as income and the court doesn't have discretion. However, that was the court's findings as to why they denied retroactive. And I would agree that the court didn't have that ability at that point because there was no dispute that he was receiving the income at the level he was as of the date that I filed the petition in September of 2014. My discussions as it relates to the delay tactics in discovery is an overarching argument throughout the remaining issues in the case. Well, I mean, the court does have discretion as to retroactivity. You would agree with that? Yes, I do. But my point, my concern is I don't think these are appropriate things to consider in exercising that discretion when it comes to retroactivity. Yes, I would agree with you. And I think that, and I believe we can go back to the Dressen case, which is that specifically was saying the discretion had to do when notice was actually provided. And that's a lot of the case law that's out there is when did a person actually become notified? Because in situations people file petitions and they don't serve them. So that delay time is a factor the courts, and I believe would be within the court's discretion. Also, there are situations where fathers or mothers, the payors, are providing in other ways. And so the court can have discretion and look at what income was actually being received. And I believe that was the purpose behind providing a court discretion for retroactive child support. However, once again, that was not the situation in this case. So is it your position that once the child court has determined that for that period of time there was income that hadn't been accounted for, that should have been made part of the child support calculation, that absent any issue in regards to the timing of the notice, that the court really is without discretion in ordering it be retroactive to the date of filing? I believe that if you, in conjunction with reading the marriage of Rogers, as well as the purpose and meaning behind child support, yes, Your Honor, I think that once it is conclusively established, and the trial court in this case found that he was receiving and found that the exercise of those stock options were income, that any other finding would obviate the purpose and need for child support and allow, specifically in this situation, somebody to pay child support at an $80,000 level while making almost three times or four times that amount. When the person did have notice, when the person wasn't providing other things or there weren't some type of circumstances impacting the appropriateness of requiring it to be retroactive to that date. Absolutely. And that would go back to, once again, the notice as well as my previous discussion as relates to potential other income that the receiving party had received during that part. What about a showing of hardship on the part of the obligor? I believe that that could potentially be an argument in another case. I would have to say in this case hardship was not an issue for Mr. Leitze. I wouldn't sit here and be able to advise the court on what I believe would be a factor for discretion, but specifically in the case that we're in here, the discretion could not be based on the fact that, and I believe it is an abuse of discretion, for the court to find denial of retroactive after finding receipt of income because I agreed to continue a status hearing. There's no dispute by looking at the docket entries and by looking at the discovery and the continual correspondence between Mr. Passwater and I that we were in litigation, contested, highly contested litigation as relates to me trying to determine how much money Mr. Leitze actually received in income because it was clear based on just the initial discovery that his 2013 affidavit was false and that the 2000, and I call it a 2014 affidavit, however, I didn't actually receive it until 2015. It's dated November 26, 2014. I did not receive that affidavit in the course of discovery until November of 2015. And so, once again, we're in November of 2015 is when I first actually received answers to interrogatories, a true supplemental response to requests produced and the financial affidavit. And directly after that period of time, I scheduled depositions. I had been subpoenaing the documents. So not only do I believe, and it's my position, that the courts abused its discretion as relates to retroactivity related to the findings specific to how he exercised his discretion, but also I do believe that his specific findings as to the discovery and other findings within the order were manifestly against the weight of the evidence that I've provided. Okay. Thank you. Thank you. We'll have time for rebuttal. Thank you very much. Mr. Passmore. Good afternoon, Counsel. May it please the Court. Let me address my comments to the issue that it seems that the panel is interested in the most, this discretionary decision in terms of retroactive support. This case is best understood with an understanding of the timing of events. This is not an initial paternity action where we're looking at support. This is coming on a post-judgment where there was a final decision in 2013 of what the support level was. I suspect that Ms. Webb was not happy with the level of support after she got new counsel and as time went on. And what happened then in 2014 was she filed a petition seeking to modify child support to raise it. At that time, Mr. Lightsey had been retired from 3M for some period of time. He, in all of these parties, as the Court's, I'm sure, very well aware, they're affluent people. He had, through a lifetime of work with 3M, a very large Fortune 500 company, acquired multiple residences, multiple houses. He had responsibility to pay for those things. He also had these things called stock options. And they were disclosed in 2013. Did the Court consider them in setting child support at that time? I would suggest that the Court did because they had the affidavit. We don't have the transcript of the 2013 proceedings. But we know the amount that he was making from retirement. Right. And we know the amount of support that was ordered. Was there any indication there was a deviation by the Court at that time? The Court did, in its order, say that it was a deviation. In 2013? In 2013. If you read the 2013 order, it talks about it being a deviation, specifically. And among the many issues that was present in 2013, I was the trial counsel in 2013, was the fact that you had transportation costs. There was an entire exhibit in 2013 that's not in this record about all the transportation. He flies into Springfield, rents a hotel room. This is somebody who has a lot of costs that I think the trial court would ordinarily consider in a situation of the deviation. The other thing is that this was a double coverage situation, which sort of touches upon the issues here where he was insuring this child at a very substantial cost. Counsel, let me ask you one more thing about you saying that the Court considered this back in 2013. So how did they show a change in circumstances if all of this was considered back then? Well, that's a very good issue to think about because that was something that was contested. One of the reasons there was delay is that we never conceded and initially had filed a motion to dismiss as it relates to the petition saying, we're retired, we're looking for work, here's the situation. And then as time went on, as the case drug out, as various issues got resolved, then he did become employed. And at that point it didn't make any sense to take a position that there wasn't a substantial change in circumstances. And in fact, Rich Leisey voluntarily upped his child support when his job turned into a paying position. So that was the testimony that was in front of the trial court when these matters were considered, and that's why the trial court did not err in setting support. But now the trial court did consider the stock options moving forward, right? Correct. I understand it wasn't retroactive, but you're saying so the trial court considered the stock options moving forward and that was incorrect since it had already been considered before? No, I think the trial court correctly considered options applying the case law that's there. Now, the interesting thing, stock options are very tricky, and if you review all the case law that's cited in the briefs, one of the things, for instance, that's problematic about saying Rich had 2014 income from stock options is when you dig into the statements, almost all of his income, and I suggest it's probably not coincidental, all of his income from stock options was prior to the filing of the petition. So when counsel gets up here and makes the arguments, oh, he had all of this income in 2014, well, his income is because he was selling the stock options before the petition was filed, and he was doing that to pay his things. So to say he had that income, that year-long 2014 income, and try to project it, what you're essentially doing is violating Section 5510 and obsessing it on retroactive income, in my opinion. It's very problematic to say that his 2014 income was X or Y when we're talking about somebody who's selling assets. I've cited the case, the court, the In re Miller case, and said the court has wide discretion under the, and that's not our district, I think it's the third district, but it's persuasive authority to this court that the trial courts have discretion when we're talking about selling a house or selling assets because they do show up as income. I've never taken the position that Rich's income is anything other than what it is. His tax returns say certain numbers. I went through great length before this court trying to explain, because his 2014 box one income says a very large number, it doesn't mean he has that income because in box 12, it goes out and a large portion of that income actually goes to the stock issuer as a cost. It's never realized by him, and under the case law of Rogers and some of the other cases that are cited, it's simply not income for child support purposes. So all of those reasons, the trial court did not abuse its discretion in evaluating his income here. So the trial court got it right as far as what his income was? It got it right in the extent it deviated, it got that right too. The most analogous case is our case of Fourth District, the Bush case, where we had two physicians with very large incomes, and we said, under the old guidelines, it's not an abuse of discretion. We should deviate where we have two parents with significant incomes. Even by her own affidavit, Ms. Webb had $300,000 in income in 2015. It would be hard-pressed to say that somebody who's paying, and he's assessed at $36,000 a year, that's what he's paid, and that's what the court found as his support. They deviated downward to that number from the $4,000 and some a month. To say that Rich's payment of $36,000 doesn't significantly meet the needs of this child, I would think would be outside of the evidence. You know, his contribution is significant, and if you continue to raise that up to the $4,000 or the higher number, essentially it results in a windfall to Ms. Webb, where she is not having to support this child essentially because she has such a large income. Mr. Passwater, in terms of retroactivity, because I don't want to have you run out of time without addressing this, under what circumstances would a trial court fail to find the increased child support retroactive to the date of filing and not have abused its discretion in doing so? Well, first of all, if you take the position that you always have to go retroactive, which maybe does, then essentially you're reading something into the statute that is not there. I mean, it is discretionary. The distinction that I made as to Karn's case that we just briefly discussed is Karn's was an initial child support case where under the Parentage Act, the initial pleading has to be retroactive. The Illinois General Assembly knows that it says shall. It knows the difference between shall and may when it says you shall make it retroactive. And when you're talking about modification under 510, that is a permissive thing, and that provides discretion to the court. Now, the question I think maybe raises is what factors or what does the court consider? And I don't know that there's a case that is directly on point that would set out what the factors are that the court should consider in determining retroactivity, but I'd suggest in this particular case that the matter that was determined by the court as dispositive is important. And that's following our case in Carpel, the Fourth District Carpel case, where the court looked at delay and why was there this long period of time. When you make a retroactive award, you create some problems because it's not like it's just a sequential $100 a month, you know, $1,000 a month. Instead, you're creating a large number. In this case, going back to 2014, even assessing $3,000 instead of $4,000, you know, you're talking about a year and a half of, I mean, a $40,000 award, which is something very, you know, yes, the numbers might be the same, but it's different because it's not the sequential amount. So there is a difference there between sequential child support and a large retroactive award. Okay, so there's an arrearage and you set up some type of agreement or order on the arrearage. I'm not quite following that. Well, there is a remedy, yes. If they don't have the money, you can do that. But in terms of trying to assess, is this remedy the same? I mean, it's different, and I think it is very different to go back retroactive. Why the court didn't correctly exercise its discretion in this case is because the court looked at what the issues were. And the court was in the best position to see, you know, you heard a lot of, and I almost put it in, with all due respect, sort of testimony about the discovery. I have a very different view on the discovery. Ms. Webb wanted to relitigate the previous case, and so she asked for 2012 information. Prior to the 2013, she tried to go do the discovery from the previous case. And we were ultimately successful in getting Judge Nardulli on the motion to compel hearing that occurred, which is not in front of you because there is no transcript provided. But in that, the ultimate order of the court was that we weren't going to go back there. They did set a date. In terms of some of the old monies that were asserted owed, they tried to go back a very, you know, In short, they tried to make this discovery so lengthy that it was found to be that it should be restricted. Would that relate to the contempt petition? Well, I think it relates to the delay, if you will, being in good faith. And under Carpel, that's something that this court, the trial court is presumably aware of it, and cited Carpel, in fact, and said in the trial court's decision, he looked at that case and he said, this is why I have discretion. I'm going to look at the facts. I'm familiar with these people. I'm familiar with the discovery dispute. I'm in the best position to look at this, and I think that the date should be April 1. Did the discovery dispute occur following the filing of the September 2014 petition? It did. The sequence, I believe, is as follows, and I have a little bit of trouble with some of the charts that have been submitted because I don't think they're accurate. I've tried to point those out in my response. But within the first 45 days of discovery being done, there was a discovery response. You've heard again here today that allegedly the affidavit wasn't included. I think the affidavit was. I don't know that. And if the affidavit wasn't there, well, why not take that to the trial court and say, oh, it wasn't provided until 2015? I have a certificate of service on file that says it was provided within the first 40-some days. Following that, additional discovery got propounded. There was another set, so they got even more voluminous, and that's when the motion for a protective order was filed saying, look, some of this stuff, we shouldn't be making this case bigger than it needs to be. We're not going to go back and relitigate income from 2012 and so on. And that was heard in June of that year. And after that, then there was a requirement in compliance with Illinois Supreme Court Rule 201K that the parties actually personally consult, which the motion is to compel, if you note. They don't have that in there. I think they're required in order for there to even be a sanction order. But I would ask as to the sanctions, that issue has been waived because it was never presented to the trial court in the first place. We got halfway through the trial, and then all of a sudden we got, oh, yeah, you need to give us some sanctions on discovery. That issue should have been raised prior to even getting to trial or the very first day of trial saying, look, I would really love to proceed. I'm prepared to proceed, but I need X, I need Y, and I asked for it on this date, and here's my 201K letter. I mean, that's the procedure. But going back to this abuse of discretion about retroactive, I just simply think there's a lot of problems that you have with that because of the passage of time. Again, you don't know Mr. Lightsey's 2014 income. You ultimately got a determination at the time of trial what his income was, but that was based and included the income from his employment. It included a statement as to the exercise of stock options over time. When were they? I think it is very important. Again, if you're going to make it retroactive to 2014 and use 2014 year-long exercise of stock options, that's not what 510 provides. That's not what our law is that you can't go retroactive. There's a due process requirement that says, look, you can't do that. More fundamentally, when it comes to this income, what we're talking about is somebody who's basically selling an asset because he had homes, he had cars, and he was not working, and he needed to pay those bills. He had the hope and the objective of working. He ultimately received a job that was commiserate with his experience as an executive with a startup that resulted in pay, but he didn't delay anything, and he certainly didn't do anything by which a retroactive award would be mandatory where we would say we have to go retroactive. To take the position that this child did not receive the benefit of the income that was received, I think is an unfair statement to Mr. Lightsey, who ultimately has been involved to the extent he can with this child and has provided child support and continued to pay the child support that was ordered, continued to participate in the court process, and he did so, and there's no finding in the trial court that he did anything improper in this particular case. So for those reasons, I'd ask the court to deny the request for retroactive child support. The other issues I think are fully briefed in the brief. I'll stand on the briefsets of those. If there's any additional questions, I'd be available. Thank you. Thank you, Mr. Passwater. Ms. Lawless, rebuttal argument? Yes, Your Honor. I'll try to address Mr. Passwater's and I believe Justice Holder-White's first question, which was did the child support order in 2013 provide a deviation based on the Mr. Passwater's position here today and Mr. Lightsey's was that he disclosed the stock options. However, when you look specifically at the 2013 affidavit, there is no mention of any monthly income from investments, stocks, and there's specific lines for that in the affidavit, which is provided in the appendix. Specifically, as relates to the 2013 order, the child support order, and this would be appendix A-6, says according to the exhibits and evidence presented, Richard's net income is $6,643 per month, thus making his statutory monthly obligation of $866. Richard has voluntarily agreed to an upward deviation of an additional $134, resulting in a child support obligation of $1,000 per month. There is no dispute and it is not something that is unclear as to what the court decided in 2013 and what it was presented with. Specifically, if you go down further in that, it says that the court notes Richard's independent consulting firm is in the beginning stages and that his income may ultimately increase. And then provided that Mr. Leitze actually has to provide income statements to Ms. Webb to be able to realize what his actual income was going forward. That's where the litigation started. So it ends at 2013 order. It was not Ms. Webb upset about what the income level was. She actually thought at that time Mr. Leitze was accurate and honest in his affidavit when he stated he only was receiving his pension. In fact, he then filed, Mr. Leitze filed the first post-judgment petition and that was saying I don't need to provide my income statements. That's unfair because there's four partners and we're doing this. So I then got involved in the case based on that filing. And based on that filing and, as I said before, Ms. Webb's realization on Google that Mr. Leitze was vice president of marketing for a catalyst card company. I mean he had a whole profile about this based on that. So there was multiple facets that led to the petition for modification in child support in September of 2014. There's no dispute that he was receiving income at a level that was much higher than $80,000 which he was paying child support at. Now, also, Mr. Passwater brought up that I did not ask for, Ms. Webb did not ask for or identify the discovery disputes at the time of the final hearing. That's also not true. The pretrial memorandum specifically that I filed before the trial said that I was requesting discovery sanctions. And discovery sanctions, there's a, I believe we have a difference of opinion as to what the documents identify in the discovery. But that's for the court to decide because they are all within the record. And that is the 2014 affidavit was not provided as part of the response to request to produce. I then filed a 201-K letter. I sent Mr. Passwater two 201-K letters which are attached to my motion to compel, which is filed in February of 2015. In those letters I identify, I never received, I received the first page of an affidavit, please supplement it with the remaining part. I did not receive that. Instead, I received a motion to dismiss as well as a motion for a protective order and stay because I was asking for income statements. It's very clear why Mr. Lightsey didn't want to provide those income statements. He didn't want to provide any of his stock options was because it would show exactly what the court found, that he was receiving in excess of $300,000 per year in the exercise of stock options. And I'm not asking the court to make some determination based on, you know, pull it out of anywhere for 2014 income. I provided as part of my closing argument as well as the FIN plans several different options which identify specifically the income Mr. Lightsey received starting in September of 2014 because I provided detailed itemizations to show that the court could not have to average or make a determination out of nowhere. There's a way to determine income and it's just looking at your monthly bank statements and the fidelity stock options and you add it to the pension that he was receiving. It's not difficult or I don't think that falls under the discretion of the court to say it's too hard to determine. I believe that's what Mr. Passwater is attempting to say, is that that's the issue, you know, it's hard because it's $40,000. I agree that it's hard that Ms. Lightsey and Kendall specifically didn't receive the benefit of that $40,000 of child support and while Mr. Lightsey was able to live the very lavish lifestyle which is clear from his records and from his testimony himself. And based on that, Your Honors, I would ask that the trial court's order be vacated with the directions pursuant to what I've outlined as my conclusion and prayer for relief in the brief. Thank you very much. Thank you, Counsel. Thank you both. The case will be taken under advisement and a written decision shall issue.